UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SOUTH CAROLINA COASTAL CONSERVATION LEAGUE, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, CHARLESTON DISTRICT; LTC JEFFREY S. PALAZZINI, in his official capacity as Commander of the Charleston District; LTG TODD T. SEMONITE, in his official capacity as Chief of Engineers; MARK T. ESPER, in his official capacity as the Secretary of the U.S. Army; UNITED STATES DEPARTMENT OF TRANSPORTATION; FEDERAL HIGHWAY ADMINISTRATION; DR. WALTER C. WAIDELICH, JR., in his official capacity as Executive Director of the Federal Highway Administration; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; E. SCOTT PRUITT, in his official capacity as Administrator of the U.S. EPA; CHRISTY HALL, in her official capacity as South Carolina Secretary of Transportation, <br><br> Defendants. | Civil Action No. 2:17-cv-3412 <br><br> **Opinion and Order** |

This matter is before the Court on Plaintiff South Carolina Coastal Conservation League's ("Plaintiff" or "Conservation League") motion to compel completion of the administrative record. (ECF No. 65.) For the reasons set forth in this Order, the motion is granted in part and denied in part.

1

## BACKGROUND

This action challenges the allegedly unlawful approval of federal permits for construction of the South Carolina Department of Transportation's ("SCDOT") planned Interstate 73 ("I-73") project in South Carolina, a proposed new interstate highway to Myrtle Beach. (Am. Compl. ¶ 1.) The Conservation League alleges that such a project would cost up to $3.8 billion to construct and unnecessarily destroy hundreds of acres of freshwater wetlands, despite the existence of viable, cheaper, and environmentally-preferable alternatives to the new roadway. (*Id.*) Plaintiff further alleges that Defendants U.S. Army Corps of Engineers and various Corps officials (collectively "Army Corps"), as well as the Federal Highway Administration and its officials (collectively "FHWA"), conducted incomplete and inadequate assessments of the purpose of, need for, environmental impact of, and alternatives to the I-73 plan. (*Id.* ¶¶ 2-3.)

Plaintiff seeks a declaration that the decisions by the Army Corps and U.S. Environmental Protection Agency and its officials (collectively "EPA") not to prepare a Supplemental Environmental Impact Statement ("SEIS"), but rather rely on a nearly ten-year-old Environmental Impact Statement ("EIS") and less searching "Reevaluations," as well as to approve the Record of Decision ("ROD") for the I-73 project were unlawful, arbitrary, and capricious in violation of the Administrative Procedures Act ("APA") and National Environmental Policy Act ("NEPA"). (*Id.* ¶ 4.) Plaintiff further seeks a declaration that the Army Corps' and EPA's decisions to approve the relevant permit ("Section 404 Permit") pursuant to Section 404 of the Clean Water Act ("CWA") were arbitrary, capricious, and in violation of the CWA. (*Id.*) Moreover, the Conservation League seeks a declaration that FHWA has violated NEPA, the APA, and Section 4(f) of the Department

of Transportation Act of 1996 by approving the 2017 Reevaluations for I-73 and by failing to prepare a SEIS and an updated Section 4(f) evaluation. (*Id.*) The Conservation League asks the Court to vacate (1) the Army Corps' 404 Permit and associated ROD, (2) the Army Corps' Environmental Assessment ("EA"), and (3) FHWA's 2017 Reevaluations, and to order the Army Corps and FHWA to comply with the CWA, NEPA, APA, and Section 4(f) in connection with all further actions relating to the I-73 project. (*Id.* ¶ 5.)

On April 18, 2019, the FHWA, Army Corps, and EPA each lodged a separate, certified administrative record in support of its challenged action(s). (ECF No. 61.) Plaintiff filed a motion to compel completion of the administrative record on August 26, 2019. (ECF No. 65.) In the motion, Plaintiff asserts that the compiled administrative record is incomplete because it does not include all information that was directly or indirectly considered by the federal agencies involved. (*Id.* at 2.) The Conservation League requests an order from the Court requiring those agencies to complete the administrative record and produce a privilege log for any documents being withheld under a claim of deliberative process privilege. (*Id.*) The Army Corps, United States Department of Transportation ("USDOT"), FHWA, and EPA (collectively "Federal Defendants") filed an opposition on September 26, 2019. (ECF No. 67.) In the opposition, Federal Defendants contend that the administrative record is accurate and complete, that Plaintiff is inappropriately seeking predecisional deliberative documents that are not part of the administrative record, and that a privilege log is not required. (*Id.* at 4.) Plaintiff replied on October 10, 2019 (ECF No. 68). Plaintiff filed a notice of supplemental authority on January 8, 2020 (ECF No. 69) and Federal Defendants responded on January 17, 2020 (ECF No. 71). These matters are ripe for review and the Court issues the following ruling.

## **LEGAL STANDARD**

The APA provides for judicial review of final agency action. *See, e.g. Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 629 n. 3 (4th Cir. 2017). An agency's decision must be set aside when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citation omitted). However, this deferential standard "is not meant to reduce judicial review to a 'rubber-stamp' of agency action," and the Court "must engage in a 'searching and careful' inquiry of the record." *Id.* (quoting *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C. Cir. 1976); *Citizens To Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

When conducting judicial review of agency action under the APA, "the court shall review the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706. The U.S. Supreme Court has made clear that this review must be based on the "full administrative record that was before the [agency] at the time [it] made [the] decision." *Citizens to Pres. Overton Park*, 401 U.S. at 420, *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). As explained by multiple courts, including district courts in the Fourth Circuit, "'The whole administrative record includes pertinent but unfavorable information, and an agency may not exclude information on the ground that it did not 'rely' on that information in its final decision.'" *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, No. CV ELH-16-1015, 2017 WL 3189446, at *7 (D. Md.

July 27, 2017) (quoting *Tafas v. Dudas*, 530 F. Supp. 2d 786, 793 (E.D. Va. 2008)). This means an agency must include all documents and materials "directly or indirectly" considered by the agency. *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (stating "[t]he complete administrative record consists of all documents and materials directly or indirectly considered by the agency"); *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) ("The 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." (citation and quotation marks omitted; emphasis in original)). As to predecisional deliberative materials, "absent a showing of bad faith or improper behavior, agency deliberations not part of the record are deemed immaterial." *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (citation, alterations, and quotation marks omitted).

"If an agency fails to produce a complete administrative record, a party may request supplementation of the record." *Outdoor Amusement Bus. Ass'n, Inc.*, 2017 WL 3189446, at *12 (citing *Otsuka Pharm. Co. v. Burwell*, No. GJH-15-852, 2015 WL 1579127 (D. Md. Apr. 8, 2015)). An agency is "entitled to a strong presumption of regularity that it properly designated the administrative record," and therefore supplementation of the record is "the exception not the rule." *Id.* at *12–*13 (citations and quotation marks omitted). Nonetheless, a plaintiff can overcome this presumption if they:

> (1) 'identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record,' and (2) 'identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record[.]'

*Id.* at *13 (quoting *Ctr. for Food Safety v. Vilsack*, No. 15CV01590HSGKAW, 2017 WL

5

1709318, at *3 (N.D. Cal. May 3, 2017)). Where a party is attempting to include documents considered by the agency, no showing of bad faith is required and a plaintiff must only present "clear evidence," which means a "strong, substantial or prima facie showing that the record is incomplete." *Id.* at *18 (quoting *Tafas*, 530 F. Supp. 2d at 795) (quotation marks omitted).

## **DISCUSSION**

At the outset the Court would note that the relevant issue being decided here is whether Plaintiff has met its burden to present "clear evidence" that the compiled administrative record is incomplete. With the exception of one item of extra-record evidence—which the Court finds should be added to the record as a supplement—the Coastal League has not carried this burden, and the Court declines to substitute its subjective judgment for the relevant agencies' delineation of the materials that were considered in rendering final decisions on the challenged actions. As noted above, the party seeking to complete or supplement the record must both: (1) identify reasonable, non-speculative grounds for the belief that the materials were considered by the agency but not included in the record; and (2) identify the allegedly omitted materials with sufficient specificity. *See Ctr. for Food Safety*, 2017 WL 1709318, at *3 (citing *Winnemem Wintu Tribe v. U.S. Forest Service*, No. 2:09-CV-01072-KJM-KJN, 2014 WL 3689699, at * 10 (E.D. Cal. July 24, 2014)). The Court will address each proffered set of omitted materials in turn.

First, the Coastal League asserts that the administrative record is generally incomplete due to the Department of Justice's October 2017 Wood Memorandum ("Wood Memo") issued to agency counsel regarding the compilation of administrative records in

APA litigation—specifically, the Coastal League objects to the Wood Memo's directive that "'agency deliberative documents are *not* properly considered part of the administrative record and therefore generally should not be produced as part of the record filed with the court, nor listed in a privilege log.'" (ECF No. 65 at 5 (quoting Wood Memo, ECF No. 65-3 at 2 (emphasis in original)).) Plaintiff argues that the Wood Memo "reserves to the agency the sole authority to determine which documents are 'relevant' and therefore part of the administrative record, with no disclosure to the Court or the parties about . . . other documents that were part of the agency's decision-making process but . . . excluded from the administrative record." (*Id.* at 5–6.) Plaintiff contends that Federal Defendants' reliance on the Wood Memo has caused them to compile a record that improperly "excludes some unspecified number of internal, predecisional materials that were part of the agencies' decision-making processes." (*Id.* at 10.) Plaintiff further asserts that Federal Defendants' position is inconsistent with the Fourth Circuit Court of Appeals' order in *Defenders of Wildlife v. United States Department of the Interior,* No. 18-2090 (4th Cir. Feb. 5, 2019).

The Fourth Circuit's order in *Defenders of Wildlife* is unpublished and has no binding precedential weight. *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 546 n.4 (4th Cir. 2019) ("Unpublished decisions, of course, do not constitute binding precedent in this Circuit." (citation omitted)). Moreover, the *Defenders of Wildlife* order is one paragraph in length and contains no reasoning; therefore, it has no persuasive weight. *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (stating unpublished opinions are "entitled only to the weight they generate by the persuasiveness of their reasoning" (citation and quotation marks omitted)). The Fourth Circuit has not directly spoken on the

issue of whether predecisional deliberative materials are part of the administrative record. However, the only federal appellate court to squarely rule on the issue has held that such materials are not part of the record and do not need to be disclosed, whether by content or by privilege log:

> We also find that the District Court did not abuse its discretion by declining to require that the Fisheries Service include on a privilege log those documents that the agency excluded from the administrative record because they were deemed predecisional and deliberative. The District Court correctly observed that "predecisional and deliberative documents 'are not part of the administrative record to begin with,' so they 'do not need to be logged as withheld from the administrative record.'" J.A. 18 (citing *Oceana, Inc. v. Locke*, 634 F. Supp. 2d 49, 52 (D.D.C. 2009), *rev'd on other grounds*, 670 F.3d 1238 (D.C. Cir. 2011)). As we have held, on arbitrary and capricious review, absent a showing of bad faith or improper behavior, "[a]gency deliberations not part of the record are deemed immaterial." *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279, 1280 (D.C. Cir. 1998). Because predecisional documents are "immaterial," they are not "discoverable." Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter *that is relevant* to any party's claims or defense . . . ." (emphasis added)). A privilege log is required only when "a party withholds information otherwise discoverable by claiming that the information is privileged," Fed. R. Civ. P. 26(b)(5), and since predecisional documents are irrelevant and therefore not "otherwise discoverable," they are not required to be placed on a privilege log.

*Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). Accordingly, the Court finds that Plaintiff has not satisfactorily demonstrated that the administrative record is generally incomplete due to the alleged exclusion of an unspecified set of internal, predecisional materials and the motion to compel on this basis is denied.

Second, the Conservation League asserts that it is "left to speculate about exactly what documents are missing given Federal Defendants' adherence to the Wood Memo" (ECF No. 65 at 15), but nevertheless goes on to describe several sets of documents that it claims were improperly excluded. The first example Plaintiff gives (*id.* at 15–16) is a 2011 EPA letter to the Army Corps in which the EPA "highly recommend[ed] the

8

consideration of [the] existing S.C. 38/U.S. 501 route, along with phased up-grades, as the preferred alternative for the I-73 corridor, as it is an existing four lane highway with up-grade potential, and transects already degraded waters of the U.S." (ECF No. 65-5 at 2.) After expressing various shortcomings in the alternatives analysis, the EPA stated that "the project, as currently proposed, does not comply with the Section 404(b)(1) Guidelines and will have substantial and unacceptable adverse impacts on ARNIs. Therefore, we recommend denial of the project as currently proposed." (*See id.* at 2–3.) Plaintiff concedes that the EPA's formal objection letter to the Army Corps appears in the administrative record but claims that the record is nonetheless incomplete because it "contains no internal materials from EPA explaining how or why EPA ultimately withdrew its well-founded objection to the project." (ECF No. 65 at 16.) Similarly, Plaintiff points to certain emails sent to Federal Defendants by officials at the South Carolina Department of Natural Resources ("DNR") in 2005 and 2011—which document DNR's position that the alternatives analysis was flawed—as "inexplicably missing" from the record. (*Id.* at 17–18 (citing ECF Nos. 65-6 & 65-7).) Plaintiff argues, "The fact that documents such as this are missing from the administrative record leaves the Conservation League to guess at what else might be missing—and frustrates the very purpose of judicial review under the APA by denying the Court access to all relevant information." (*Id.* at 18.)

Federal Defendants respond that the documents Plaintiff seeks relating to inter- and intra-agency consideration of the EPA's 2011 objection letter constitute predecisional deliberative materials that were properly excluded from the administrative record in the first instance as outside the scope of APA review. (ECF No. 67 at 15.) What's more, Federal Defendants explain that EPA's 2011 letter was in response to SCDOT's 2011

9

application for a Section 404 permit, and that the Army Corps never completed review of that permit application because the application was withdrawn. (*Id.*) Federal Defendants argue

> there is no reason to believe that [the] EPA's 2011 comment letters on a withdrawn permit application (or deliberative materials associated with those letters) are 'central to the validity of the approvals and analyses' in this case, which concerns the Army[] Corps['] issuance of a Section 404 Permit in response to SCDOT's 2016 application, not its 2011 application.

(*Id.* at 16 (quoting ECF No. 65 at 15).) They further contend that the precise critiques raised in the EPA's 2011 comment letter are found throughout the record, along with written responses to those critiques, and that the question of whether the responses are reasonable "concerns the records' adequacy, not their completeness." (*Id.*) Likewise, Federal Defendants assert that the EPA's duty of oversight at issue in the instant litigation applied to the Army Corps' review of, and decision to grant, SCDOT's *2016 permit application*, and the DNR emails cited by Plaintiff simply were not considered, directly or indirectly, when the EPA took the final action that Plaintiff challenges here. (*See id.* at 19.)

The Court agrees with Federal Defendants and finds that Plaintiff has not met its burden to show reasonable, non-speculative grounds for the belief that two DNR emails from 2005 and 2011 respectively (ECF Nos. 65-6 & 65-7) were considered by EPA decision-makers when deliberating and rendering their final decision in 2016 and 2017. The mere fact that representatives of a state agency lodged email objections to the I-73 alternatives analysis at some point in the project's roughly thirteen-year history from conception to permitting does not, on its own, indicate that those emails were considered in the EPA's final decision. Plaintiff has not offered any evidence to suggest that the decision-makers in 2016 culled through five- and eleven-year-old emails before rendering

10

their decision on the 2016 permit package that was before them. Furthermore, the Court finds that unspecified inter- and intra-agency communications pertaining to the EPA's 2011 objection to the withdrawn 2011 permit application are indeed outside the scope of the APA review at issue here. Federal Defendants have indicated that the EPA 2011 objection letter itself was considered during the 2016 application review and refinement of the I-73 mitigation plan, but that the EPA's record certification avers the prior communications pertaining to the now obsolete 2011 permit application were not considered. (*See* ECF No. 67 at 19–20.) It would be pure speculation on the part of the Court to assume that EPA officials *did* consider such prior communications and would upend the presumption of regularity accorded an agency's designation of the record. *See Outdoor Amusement Bus. Ass'n, Inc.*, 2017 WL 3189446, at *12. The Court is not permitted to simply "guess at what . . . might be missing" as Plaintiff suggests. (*See* ECF No. 65 at 18.) Accordingly, the motion to compel inclusion of these materials in the administrative record is denied.

Third, the Conservation League contends that despite extensive changes to the circumstances of the I-73 project, such as the need to provide national interstate linkage, significant changes in cost projections, changes to planned mitigation, and changes in applicable population growth and traffic projections, "the record reflects no meaningful internal FHWA consideration of these changes, other than the final NEPA Re-evaluations prepared by FHWA in 2010 and 2017." (*Id.*) Plaintiff cites a July 2016 email in which an EPA employee working on the project questioned whether a SEIS would be required because "the initial EIS was so long ago" and opined that an SEIS should be prepared "as many of the alternatives in the original have changed dramatically." (*See* ECF No. 65-

11

8 at 2.) Plaintiff further cites an August 2016 email in which the same EPA employee noted that the alternatives analysis was ten years old, that the EPA "would really like to see an update," and that the EPA hoped this update could be accomplished through the NEPA process. (*See* ECF No. 65-9 at 2.) Plaintiff argues that Federal Defendants' failure to include such internal documents pursuant to the Wood Memo "defeats the presumption that the administrative record is complete." (ECF No. 65 at 19 (citations omitted).)

Federal Defendants respond that the emails Plaintiff cites as examples of "important" deliberative materials constitute the cherry-picked, selectively-quoted, preliminary opinions of a single EPA employee, which predate the release of FHWA's 2017 Reevaluations—a roughly 2000-page analysis in which the FHWA concluded no SEIS was needed. (*See* ECF No. 67 at 16–17.) Federal Defendants argue, "Because the statements in [the July and August 2016 emails] were made without the benefit of the 2017 Reevaluations, they do not reflect the email author's fully informed views on the need for a supplemental EIS." (*Id.* at 17.) Moreover, they assert that as a general matter, "the Fourth Circuit has warned courts against divining an agency's position from exchanges like those in the [July and August 2016 emails] since 'most federal agencies consist of numerous actors with varying levels of responsibility and different objectives.'" (*Id.* (quoting *Nat'l Audubon Soc'y v. Dep't of the Navy*, 422 F.3d 174, 199 (4th Cir. 2005)).) Federal Defendants further represent that the information in the July and August 2016 emails is, in all material respects, already contained in the EPA's record in the form of a further email exchange that omits the conclusory phrase "changed dramatically" when describing the alternatives analysis, and is not a predecisional deliberative document because it included recipients outside the federal government—namely, SCDOT. (*Id.*)

12

The Court finds that the July and August 2016 emails cited by Plaintiff do not constitute clear evidence that portions of the EPA administrative record pertaining to the FHWA's consideration of changes to the alternatives analysis were improperly withheld. The administrative record as currently compiled already includes memorialization of the EPA's concern that the alternatives analysis was outdated and opinion that an SEIS would likely be needed. The motion to compel on this basis is denied.

Fourth, the Conservation League asserts that the FHWA's administrative record is incomplete for failing to include a July 11, 2017 letter, and accompanying attachments, submitted by the Conservation League requesting the preparation of an SEIS and describing new information the agency allegedly failed to consider since the ten-year-old EIS had been prepared. (ECF No. 65 at 20.) Plaintiff contends the FHWA also improperly refused to include its own July 19, 2017 response letter to the Conservation League, in which it "finally determined" that no SEIS was required. (*Id.*) Federal Defendants respond that Plaintiff's July 11, 2017 letter is not part of the record because it post-dated FHWA's 2017 Reevaluations, which constitute the final action at issue, and because FHWA's July 19, 2017 response to Plaintiff is not a final agency action. (ECF No. 67 at 20.) Federal Defendants argue that because Plaintiff's letter was written two months *after* the FHWA decided in its Reevaluations that SEIS(s) were not required, the letter could not have been "before the agency" at the time the challenged decisions were made. (*Id.* at 20–21 (citations omitted).)

Two conditions must be satisfied for an agency action to be "final." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). First, the action must "mark the consummation of the agency's decision making process." *Id.* at 178 (citation and quotation marks omitted).

13

Second, it "must be one by which rights or obligations have been determined or from which legal consequences will flow." *Id*. (citation and quotation marks omitted). The Court concludes that the FHWA's July 19, 2017 response letter did not mark the consummation of the FHWA's decision making process regarding whether a SEIS(s) was required, but rather was a restatement of the final decisions made in the agency's 2017 Reevaluations. (*See* ECF No. 65-13 at 2.)[1] Moreover, the Court finds that the action from which legal consequences—specifically, the declination to conduct a SEIS(s)—flowed in this matter was the FHWA's issuance of the 2017 Reevaluations, not a one-page response letter sent a few months later. As Federal Defendants rightly note, "had FHWA never sent the July 19, 2017 letter, Plaintiff would still have had a cause of action to challenge FHWA's decision not to prepare a supplemental EIS." (ECF No. 67 at 23.) Accordingly, the Court concludes that the letters Plaintiff seeks to add to FHWA's record are post-decisional and were, therefore, properly excluded.

Plaintiff argues, in the alternative, that its July 11, 2017 letter, and accompanying attachments, fall within an exception allowing supplementation of the record for evidence demonstrating to the Court the agency's failure to consider significant environmental factors and relevant evidence. (ECF No. 65 at 20–21.) Plaintiff states:

> For example, the Conservation League's letter describes new information on environmental impacts including wetlands impacts, endangered species, projected truck volumes, noise impacts, and induced development. [(ECF No. 65-10 at 5.)] The letter highlights specific information the FHWA failed to consider in the Re-evaluations, such as the environmental impacts of new

---

[1] The FHWA's July 19, 2017 response letter states, in relevant part: "Pursuant to 23 CFR §771.129, re-evaluations were completed for I-73 North (I-73/74 to I-95) and I-73 South (I-95 to S.C. 22). *Based on the results of the re-evaluations*, no changes were made to the selected alternatives that would result new significant environmental impacts that were not previously evaluated. In addition, there was no new information or circumstances relevant to environmental concerns and bearing on the selected alternatives or their impacts that would result in significant environmental impacts that were not previously evaluated. Thus, the FHWA South Carolina Division Office *has determined that a new EIS or Supplemental EIS is not required at this time*." (ECF No. 65-13 at 2 (emphasis added).)

population growth data, the effects of tolling I-73 on the environment, or the impact of higher truck volumes on air quality. *Id*. at 7-9, 12. For example, the letter explains that

> [T]he dramatic increase in truck volume now projected for the I-73 corridor also raises major questions about other environmental impacts that were not addressed in the Reevaluations. Specifically, air quality concerns, particularly related to toxic emissions, are heavily influenced by tru[ck] traffic volumes. Yet the Reevaluations fail to account for higher traffic volumes, as well as the dramatically higher level of truck traffic, in their brief and inadequate assessments of air quality.

*Id*. at 12. The Conservation League letter also notes relevant studies or other information on environmental factors related to the project, but which the FHWA did not take into account, such as updated hurricane forecasting analysis, instead relying on outdated information. *Id.* at 13. The Re-evaluations failed to include a study which projected that I-73 would induce the development of 30,460 more dwelling units in the project corridor. *Id.* at 12. "While SCDOT and FHWA tout the economic development induced by I-73 as project benefits, the agencies also simultaneously try to ignore the environmental impacts associated with such impacts." *Id.* at 12.

(ECF No. 65 at 26.) Federal Defendants respond that Plaintiff fails to show the July 2017 letters fall within any of the narrow exceptions to the general rule that APA review is limited to the administrative record. (*See* ECF No. 67 at 24–28.)

While judicial review of agency action under the APA is typically confined to the agency record, courts recognize that "'there may be circumstances to justify expanding the record or permitting discovery.'" *Nat'l Audubon Soc.*, 422 F.3d at 188 n.4 (quoting *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1336 (4th Cir. 1995)). Supplementation of the record is "discretionary with the reviewing court." *Piedmont Envtl. Council v. U.S. Dep't of Transp.*, 159 F. Supp. 2d 260, 270 (W.D. Va. 2001) *aff'd in part, remanded in part*, 58 F. App'x 20 (4th Cir. 2003) (citation and quotation marks omitted). Courts in the Fourth Circuit have supplemented the record in circumstances "when the evidence: (1)

explains technical information or agency action not adequately explained in the record; (2) shows an agency failed to consider relevant evidence; or (3) shows an agency, in bad faith, failed to include information it considered in the record." *See Hodges v. Abraham*, 253 F. Supp. 2d 846, 855 (D.S.C. 2002), *aff'd*, 300 F.3d 432 (4th Cir. 2002). Stated another way,

> courts have allowed the record to be supplemented with outside documents (1) if it appears that the agency relied upon documents not in the record, (2) to illustrate factors that the agency should have considered but did not, (3) to provide background information helpful to an understanding of unclear or technical portions of the record, or (4) if the plaintiff alleges bad faith and provides a reasonable basis in fact for such contention.

*Piedmont Envtl. Council*, 159 F. Supp. 2d at 270. Plaintiff has demonstrated to the Court's satisfaction that the July 11, 2017 letter may illustrate factors that the FHWA should have considered, but did not, when rendering its decision not to issue a SEIS(s). Accordingly, the motion to compel is granted to the extent it seeks supplementation of the FHWA record with the Coastal League's July 11, 2017 letter and the FHWA's July 19, 2017 response; the Court directs the FHWA to supplement its record in this fashion. Of course, the decision to supplement the record with these documents has no bearing on the Court's ultimate conclusions regarding the merits of Plaintiff's challenge to the FHWA's Reevaluations and incorporated declination to conduct a SEIS(s).

Finally, the Conservation League asserts that if Federal Defendants intend "to invoke the deliberative process privilege for any documents that would otherwise be included in its administrative record, the agency must prepare and submit a privilege log to justify invocation of the privilege." (ECF No. 65 at 27.) Federal Defendants respond that "deliberative materials are excluded from the record not on the basis of privilege, but because, absent some showing of bad faith, they are 'immaterial' as a matter of law."

16

(ECF No. 67 at 14 (citing *Oceana*, 920 F.3d at 865).) As explained above, Plaintiff has not adequately demonstrated that Federal Defendants withheld materials that should have been included in the record in the first instance. Accordingly, it would undermine the presumption of regularity accorded to Federal Defendants' designation of the record for the Court to require them to produce a privilege log, which Plaintiff would undoubtedly mine for further materials it believes were wrongly excluded. The motion to compel a privilege log is denied.

## **CONCLUSION**

For the reasons set forth above, the Coastal League's motion to compel completion of the administrative record (ECF No. 65) is GRANTED in part and DENIED in part. Specifically, the Coastal League's request to supplement the administrative record with its July 11, 2017 letter with attachments (ECF Nos. 65-10, 65-11, 65-12) and the FHWA's July 19, 2017 response (ECF No. 65-13) is GRANTED. In all other respects, the motion is DENIED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 21, 2020
Greenville, South Carolina